UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X   Civil Case No.:
BRIAN ANDERSON,

                        Plaintiff,   **COMPLAINT**

  - against -

SOUNDHOUND AI, INC.,   **JURY TRIAL DEMANDED**

                       Defendant.

----------------------------------------------------------X

Plaintiff, BRIAN ANDERSON ("Plaintiff" or "Mr. Anderson"), by and through his attorneys, JOSEPH & NORINSBERG, LLC, as and for his Complaint against SOUNDHOUND AI, INC., ("SoundHound", "Defendant" or the "Company") alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. This action seeks monetary damages, declaratory, and equitable relief to redress Defendant's unlawful employment practices against Plaintiff, including: (i) failure to pay wages and commissions in violation of New York Labor Law §§ 190-198 ("NYLL"); (ii) breach of contract; (iii) violation of NYLL § 191-b and § 191-c (3) regarding timely payment of commissioned salespersons (iv) unjust enrichment; and (v) quatum meruit.

2. Plaintiff seeks to recover unpaid wages and commissions totaling approximately $332,067.16, plus liquidated damages, prejudgment interest, attorneys' fees, and costs.

3. Despite Plaintiff's successful performance in various senior sales positions, including his final role as SVP Sales Americas, Defendant systematically failed to pay earned commissions, altered compensation plans without proper authorization, removed accounts without explanation, and delayed compensation reports, all in violation of New York law and contractual

1

obligations. Plaintiff seeks relief for these violations, including statutory damages under the NYLL, which provides for liquidated damages of twice the amount of unpaid wages.

## PRELIMINARY STATEMENT

4. This action arises from Defendant's systematic and unlawful conduct in failing to compensate Plaintiff for earned wages, commissions, and bonuses in violation of the NYLL and common law. Over the course of his employment from August 2021 to May 2024, Defendant repeatedly withheld earned commissions, altered compensation plans without authorization, and failed to honor promised salary increases, resulting in substantial financial damages to Plaintiff.

5. Plaintiff, who served in progressively senior roles culminating in the position of SVP Sales Americas, consistently demonstrated exceptional performance in generating significant revenue for Defendant. Despite successfully closing numerous high-value accounts including Sportsmans Warehouse, EXL BCBS MA, and multiple other enterprise clients, Defendant failed to pay approximately $332,067.16 in earned commissions, with some commissions remaining unpaid for 18-24 months. Defendant further breached its obligations by unilaterally changing commission structures, removing accounts without explanation, and failing to provide timely compensation reports.

6. Throughout his employment, Defendant engaged in a pattern of compensation violations, including failure to implement promised salary increases from $230,000 to $270,000, changing compensation plans mid-OTR without proper documentation, and converting to a "cash on cash basis" without required amendments.

7. Despite multiple attempts to resolve these issues, including working an additional five weeks to ensure proper transition, Defendant has refused to honor its compensation

obligations, necessitating this legal action to recover unpaid wages, statutory damages, and other relief under the NYLL and common law.

## JURY DEMAND

8. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable in this action.

## PARTIES

9. At all times relevant hereto, Plaintiff Brian Anderson is a citizen of Georgia.

10. Upon information and belief, Defendant SOUNDHOUND AI, INC., is a Delaware corporation, with its principal place of business in Santa Clara, California.

11. On or about August 8, 2024, Defendant acquired Amelia US, LLC ("Amelia"), a conversational Artificial Intelligence business.

12. Plaintiff worked for Amelia from August 16, 2021 to May 3, 2024, prior to its acquisition by SoundHound, serving in various senior sales positions including Senior Sales Executive, Regional Vice President, VP Global Healthcare Leader, VP & GM, and ultimately SVP Sales Americas.

13. Amelia has its headquarters in New York, New York, with principal business offices located in the County of New York, State of New York.

14. Plaintiff is an individual who performed work for Defendant within the State of New York and was an "Employee" within the meaning of the NYLL.

15. At all relevant times, Defendant was and is an "Employer" within the meaning of the NYLL.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.

17. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

18. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

## FACTUAL ALLEGATIONS

**Mr. Anderson's Initial Employment and Return to Amelia.**

19. In March 2020, Mr. Anderson began his first period of employment with Amelia, which ended in November 2020 due to a hostile work environment created by CEO Chetan Dube.

20. On August 16, 2021, Mr. Anderson returned to Amelia as a Senior Sales Executive, with an initial base salary of $200,000. His employment was formalized through a written employment agreement, which outlined his compensation structure including a commission rate of 10% for software sales with potential kickers up to 14%, and 5% for software commission rate.

21. Throughout his tenure, Mr. Anderson demonstrated exceptional performance, leading to multiple promotions from Senior Sales Executive to Regional Vice President, VP Global Healthcare Leader, VP & GM, and ultimately to SVP Sales Americas in April 2024.

**Systematic Compensation Violations.**

22. Despite Mr. Anderson's consistent high performance and successful progression through senior roles, Defendant systematically failed to honor its compensation

obligations. When promoted to VP Global Healthcare Leader, Mr. Anderson was promised a salary increase to $270,000, but received only $230,000.

23. In April 2024, upon his promotion to SVP Sales Americas, Mr. Anderson was again promised an increase to $270,000, which Defendant failed to implement entirely.

24. Throughout his employment, Defendant engaged in numerous compensation violations, including:

    a. Changing compensation plans mid-OTR without proper documentation or signed amendments;

    b. Modifying commission percentages without authorization;

    c. Removing accounts from reports without explanation;

    d. Converting to a "cash on cash basis" without required amendments;

    e. Delaying compensation reports by more than four months; and

    f. Consistently ignoring payment disputes.

**Unpaid Commissions and Account Management.**

25. Defendant failed to pay Mr. Anderson approximately $77,067.16 in confirmed commissions, with additional EXL Q4 commissions outstanding. The total estimated unpaid amount ranges from $175,000 to $225,000, with some commissions remaining unpaid for 18-24 months.

26. Mr. Anderson successfully managed and closed deals with numerous high-value accounts, including Sportsmans Warehouse, EXL BCBS MA, Allina MUSC MSK, HSS, Eyefinity, Savista, NAU, VSP, and Visionworks. Despite these successes, Defendant failed to pay commissions on these accounts as required by the compensation plan.

27. For fiscal year 2024, Mr. Anderson was assigned an annual quota of $10,842,650, with a Q1 quota of $1,378,650. He demonstrated exceptional performance, achieving high margins of up to 45 times cost on certain deals. However, Defendant failed to pay any commissions for FY24 Q1 and partial Q2.

**Hostile Work Environment and Management Issues.**

28. During Q2 2023, Mr. Anderson and his team were subjected to hostile and abusive behavior from Bobby Srinivasan, who exercised unauthorized authority, berated employees, created hostile meetings, and pressured staff for unethical practices.

29. Throughout his employment, Mr. Anderson reported to multiple executives due to high turnover, including Scott Kohn, Jonnathan Crane, Mark Paske, Frank Suljic, Michael Anderson, Coenraad Van Der Poel, and Bobby Srinivasan, creating an unstable management environment that complicated commission tracking and payment.

**Resignation and Attempts to Recover Compensation.**

30. On April 17, 2024, Mr. Anderson announced his resignation, effective May 3, 2024. Despite the hostile environment and compensation issues, he worked an additional five weeks to ensure a proper transition of his responsibilities.

31. Between July 9 and July 16, 2024, Mr. Anderson made multiple attempts to recover his unpaid commissions through proper channels, all of which were ignored or rejected by Defendant.

32. Defendant's failure to pay earned commissions and wages constitutes multiple violations of New York Labor Law, including NYLL § 191(1)(c), § 191-b, and § 191-c(3), as well as breach of contract and unjust enrichment.

**SoundHound's Acquisition and Continued Violations.**

33. On August 8, 2024, SoundHound AI, Inc. acquired Amelia US, LLC. As the successor employer, SoundHound assumed responsibility for all outstanding wage and commission obligations owed to Mr. Anderson.

34. Despite the change in ownership, SoundHound has continued Amelia's pattern of failing to pay earned wages and commissions, refusing to honor the compensation obligations that transferred to them through the acquisition.

35. The total amount of unpaid wages, commissions, and other compensation owed to Mr. Anderson now exceeds $332,067.16, for which SoundHound, as successor to Amelia, is liable under New York law.

36. Mr. Anderson has made repeated attempts to resolve these compensation issues both before and after the acquisition, but Defendant has consistently failed to address these legitimate claims or provide accurate accounting of earned commissions.

## FIRST CAUSE OF ACTION
*(Violation of New York Labor Law § 191(1)(c) - Timely Payment of Wages)*

37. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

38. NYLL § 191(1)(c) requires employers to pay commissioned salespersons all wages and commissions earned within the timeframes specified by statute.

39. Defendant was, at all relevant times, Plaintiff's employer within the meaning of the NYLL, while Plaintiff was a commissioned salesperson within the meaning of the NYLL.

40. Defendant violated NYLL § 191(1)(c) by failing to pay Plaintiff his earned commissions within the statutorily required timeframe, with some commissions remaining unpaid for 18-24 months.

41. As a result of Defendant's willful violations of the NYLL, Plaintiff is entitled to recover from Defendant unpaid commissions, liquidated damages, prejudgment interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION
*(Violation of NYLL § 191-b and § 191-c - Timely Payment of Sales Commission)*

42. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

43. NYLL §§ 191-b and 191-c require the timely payment of earned sales commissions and proper accounting of commission earnings.

44. Defendant violated these provisions by:

   a. Failing to pay earned commissions within the statutory timeframe;

   b. Failing to provide accurate or timely commission statements;

   c. Unilaterally modifying commission structures without proper documentation;

   d. Removing accounts from commission calculations without explanation.

45. These violations resulted in approximately $332,067.16 in unpaid commissions owed to Plaintiff.

46. Due to Defendant's willful violations, Plaintiff is entitled to double damages under the NYLL, plus attorneys' fees and costs.

## THIRD CAUSE OF ACTION
*(Breach of Contract)*

47. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

48. Plaintiff and Defendant entered into valid and binding employment agreements that specified Plaintiff's compensation structure, including base salary, commissions, and bonus arrangements.

49. Plaintiff fully performed all duties and obligations under these agreements, including:

    a. Meeting or exceeding sales quotas;

    b. Successfully managing major accounts;

    c. Generating significant revenue for Defendant;

    d. Performing additional duties during leadership transitions.

50. Defendant materially breached these agreements by:

    a. Failing to implement promised salary increases;

    b. Withholding earned commissions;

    c. Modifying compensation terms without proper authorization;

    d. Failing to pay commissions on completed sales.

51. As a direct result of Defendant's breaches, Plaintiff has suffered damages in an amount to be determined at trial, but not less than $332,067.16.

## FOURTH CAUSE OF ACTION
### *(Unjust Enrichment)*

52. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

53. Defendant has been unjustly enriched by retaining the benefits of Plaintiff's services, including revenue from accounts he secured and managed, without providing agreed-upon compensation.

54. Defendant's retention of these benefits without compensating Plaintiff is against equity and good conscience.

55. The circumstances are such that equity and good conscience require Defendant to make restitution to Plaintiff in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
*(Violation of NYLL § 193 - Unlawful Deductions)*

56. The circumstances are such that equity and good conscience require Defendant to make restitution to Plaintiff in an amount to be determined at trial.

57. NYLL § 193 prohibits employers from making any deductions from wages except those specifically authorized by law or by the employee for their benefit.

58. Defendant violated this provision by:

    a. Unilaterally reducing commission percentages;

    b. Removing accounts from commission calculations;

    c. Converting to "cash on cash basis" without proper authorization.

59. These unauthorized deductions from Plaintiff's earned wages violate NYLL § 193.

60. As a result of these violations, Plaintiff is entitled to recover the full amount of unlawful deductions, plus liquidated damages, attorneys' fees, and costs as provided by law.

## SIXTH CAUSE OF ACTION
*(in the alternative-Quantum Meruit)*

61. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

62. Defendant promised to pay Plaintiff certain compensation for the work Plaintiff provided with respect to his employment as set forth in the Employment Agreement and subsequent correspondence between Plaintiff and Defendant.

10

63. Plaintiff satisfactorily performed the work at Defendant's direction with the good-faith expectation of receiving the compensation promised to him as set forth herein and which is usual and customary and of reasonable value for the services rendered.

64. Defendant failed and refused to pay Plaintiff compensation, which was fair, reasonable, and customary.

65. Defendant's conduct is actionable based upon *quantum meruit* under New York law.

66. As a result of Defendant's willful conduct, Plaintiff is entitled to recover his outstanding bonus and commission, plus interest, under a theory of *quantum meruit*, as a result of Defendant's actions.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. Declaring that the practices complained of herein are unlawful and in violation of the New York Labor Law and other applicable laws;

b. Awarding Plaintiff unpaid wages and commissions in the amount of $332,067.16, or such amount as may be proven at trial;

c. Awarding Plaintiff liquidated damages pursuant to NYLL § 198 in the amount of $332,067.16, representing double the amount of unpaid wages and commissions;

d. Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any persons acting in concert with them, from engaging in the unlawful practices set forth herein;

e. Granting an order restraining Defendant from any retaliation against Plaintiff for participation in any form in this litigation;

  f. Awarding Plaintiff prejudgment and post-judgment interest at the maximum rate permitted by law;

  g. Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

  h. Ordering Defendant to provide a complete and accurate accounting of all commissions earned by Plaintiff during his employment; and

  i. Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
   May 21, 2025

            **JOSEPH & NORINSBERG, LLC**

            _____
            John J. Meehan, Esq.
            *Attorneys for Plaintiff*
            110 East 59th Street, Suite 2300
            New York, New York 10022